
SUSAN J. BARDET, SBN 83215
**THE LAW OFFICE OF SUSAN J. BARDET**
204 East Second Avenue, PMB #413
San Mateo, CA  94401
Telephone: (650) 340-9243
Facsimile: (650) 347-4527
Email: sbardet@gmail.com

JANE F. REID, SBN 109642
**THE LAW OFFICE OF JANE F. REID**
5551 Lawton Avenue
Oakland, California 94618
Telephone: (510) 601-6630
Facsimile:  (510) 601-6630
Email: jreid@sonic.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.K., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM, L.K., L.K. and W.K.,<br><br>　　　Plaintiffs,<br><br>　　　vs.<br><br>BURLINGAME SCHOOL DISTRICT and OFFICE OF ADMINISTRATIVE HEARINGS,<br><br>　　　Defendants.<br>_____ | CASE NO. C 08-02743 JSW<br><br>DECLARATION OF SUSAN J. BARDET IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE INJUNCTIVE RELIEF<br><br>FRCP 65<br><br>Date:  TBD<br>Time:  TBD<br>Courtroom 2, 17th Floor |

I, Susan J. Bardet, know the following facts of my own personal knowledge and if called and sworn as a witness, I could and would testify competently thereto:


1.  I am the attorney of record for L.K. in the administrative due process hearing before the Office

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW

1

of Administrative Hearings ("OAH") entitled L. K. v. Burlingame School District and San Mateo County Office of Education; OAH Case No. 2008030820.

2. I filed the hearing request on March 21, 2008.

3. The hearing was scheduled to start on May 13, 2008.

4. On May 2, 2008, I received a letter from Tracy Tibbals, the attorney for the Burlingame School District ("District"), that was a statutory offer of settlement pursuant to 20 U.S.C §1415(i)(3)D)(i).

5. I had several discussions with Mr. Tibbals about the settlement offer. One area that I asked to have clarified was item 2, which provided that the District would provide an additional ten hours per week of speech and language services through a mutually-agreeable non-public agency "during the school year and extended school year."

6. Mr. Tibbals sent me an email dated May 5, 2008, in which he clarified that the offer intended that the speech and language services would start as soon as possible and continue through the 2008-2009 school year.

7. In another email dated May 9, 2008, Mr Tibbals further confirmed that the offer for the speech and language services was to continue through the 2008-2009 school year and extended school year (referred to as "ESY").

8. Lourdes Desai is the Director of Special Education at the District. When Mr. Tibbals needed to get information for me, or ask his client questions, he told me that he needed to speak to, or had spoken to, Ms. Desai.

9. Ms. Desai is copied on the May 2 letter setting forth the statutory offer.

10. Ms. Desai is also copied on the May 9, 2008 email confirming the duration of the speech and language services.

11. On several occasions when I asked Mr. Tibbals questions specifically about the May 2 statutory offer, he told me he had to speak with Ms. Desai and, on the return phone call, would advise me that he had spoken with her.  In addition, on May 6, Mr. Tibbals sent me an email that included a letter my clients had written and delivered to the District's Board of Trustees and the superintendent that day.  In it, they discussed the terms of the statutory offer, specifically referring to the 10 hours weekly of additional speech and language services and the $5000.

12. At no time during my conversations with Mr. Tibbals about the statutory offer did he ever advise me that he did not have authority to act on behalf of the District.  In fact, during a telephone conversation with Mr. Tibbals on the afternoon of May 9, 2008, he specifically stated that Ms. Desai would not increase the District's offer as requested by the parents and would rely upon the 10-day offer as clarified.  He represented that Ms. Desai indicated that the family could choose between the 10-day offer or go to hearing.

13. On May 9, 2008, I faxed Mr. Tibbals my clients' acceptance of the May 2 statutory offer.

14. When I faxed the acceptance on May 9, I also faxed a brief letter stating that my clients had accepted the offer.  Along with the letter, I enclosed a proposed formal settlement agreement.  I stated in the letter that the formal settlement agreement was being sent only as a convenience to Mr. Tibbals.

//

//

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW

15. On May 10, Mr. Tibbals emailed me a note acknowledging receipt of my clients' acceptance of the settlement offer. At that time, I agreed to allow the hearing dates to be vacated. I also ceased preparing for the hearing and advised the plaintiffs' witnesses that I would not be asking them to testify in the next few weeks.

16. With my concurrence, on May 12, 2008, Mr. Tibbals wrote to OAH and advised it that my clients had accepted the statutory offer. He attached a copy of the offer's acceptance page, showing my clients' signatures, to that letter. In the May 12 letter, he asked OAH to vacate the hearing dates, which were set to start the next day (on May 13).

17. On May 13, OAH vacated the hearing dates and set a telephonic status conference for May 27, 2008.

18. On May 15, 2008, I received a letter from Mr. Tibbals wherein he advised me that his client "did not recognize" my clients' acceptance of the settlement offer and that his clients would not comply with the terms of the settlement.

19. On May 22, 2008 I filed a motion with OAH to enforce the settlement agreement or enter judgment/decision by settlement. That motion was denied on May 23, 2008, with OAH ruling (among other things) that it did not have the authority to enforce a settlement agreement.

20. At the May 27, 2008 telephonic status conference, OAH wanted to set hearing dates. At that time, I made an oral motion to stay the hearing. OAH denied the motion and scheduled a Trial Setting Conference for June 10, 2008.

21. On May 28, 2008, I wrote Mr. Tibbals and requested that his client stipulate to a stay of the

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW

4

hearing so that the dispute over the settlement could be resolved in federal court. Mr. Tibbals responded by letter dated May 30, stating that he would not enter in a stipulation and that it was his desire to move the due process case to hearing as soon as possible.

22. On June 2, 2008, I filed the present action and gave notice to OAH and the District thereof.

23. Also on June 2, 2008, I filed a motion with OAH to stay the due process hearing pending conclusion of the present federal court action. On June 6, 2008, OAH denied that motion. I sought reconsideration of the motion, but that, too, was denied.

24. At the June 10, 2008 Trial Setting Conference, I made an oral motion to stay the hearing pending conclusion of the present federal court action. OAH again advised me at that time that it could not issue a stay of the administrative hearing on its own accord and that it required a court order to do so. However, instead of setting hearing dates, OAH set another Trial Setting Conference for June 24, 2008. Mr. Tibbals repeated his position that he wanted the hearing to start as soon as possible.

25. In my experience with OAH, hearings are set to start within 3 weeks of the trial setting conference, especially when one party seeks to have hearing dates set as soon as possible.

26. I have represented students in special education matters for over 9 years. I have lengthy experience negotiating settlements with school districts that provide for services to be delivered in the future. It is my common experience, and a standard practice in this area of the law, to settle on the need for a service, or frequency and duration of a service, but to allow the specific service provider to be mutually agreed upon by the parties at a later time – often at a subsequent meeting to develop the student's Individualized Education Program ("IEP"). This is because there are often

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW

issues that arise pertaining to the specific provider that are outside the control of the parties, such as personnel issues, availability, moving, going out of business, or changing their approach to, or character of, a particular service. Also, the needs of the student change over time, sometimes making a provider no longer appropriate. For this reason, is not uncommon to reach agreement to a needed service but allow the parties to mutually agree to the specific provider at a later time. Furthermore, even if a specific NPA or private school is specifically designated in a settlement agreement, it is common practice, as well as my usual practice, to also provide that if the named NPA or private school is no longer able or willing to continue to serve the student, or if the student's needs change, then an IEP meeting will be convened.

27. In the present case, the parties agreed to provide the speech and language services through a non-public agency. The State of California maintains a list of certified nonpublic agencies (sometimes also called "NPAs"). There are a limited number of such agencies in any given geographical area, and that provide a given service. In L.K.'s case, there are no more than approximately 10 NPAs that are certified to provide the type of speech and language service he requires. Thus, although the settlement provided that the NPA would be mutually agreed upon, the pool of possibilities is very limited.

28. If the due process hearing goes forward, I anticipate it will take at least 8 days to present all of the evidence. I anticipate calling at least 18 witnesses on behalf of L.K., and at least 8 of those are expert witnesses. In addition to the 8 days of hearing, I will have to undertake at least 4 days of hearing preparation and additional time at the conclusion of the hearing to prepare a comprehensive closing brief.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of

//

//

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW

1  June, 2008 at San Mateo, California.

                                                    _____/S/_____
                                                    Susan J. Bardet

Declaration of Susan J. Bardet In Support Of Application for TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW