

Susan Bardet <sbardet@gmail.com>

## K.L.'s parents

Susan Bardet <sbardet@gmail.com>  Tue, May 6, 2008 at 3:42 PM
To: Tracy Tibbals <TTibbals@mbdlaw.com>

Dear Tracy,

The parents decided to contact their superintendent and their school board to let them know their concerns about use of public funds in proceeding to a due process hearing in this case, as well as to explain their position directly to the ultimate decisionmakers. That is their right as citizens and as parents within the school district.

Thanks, Susan

On Tue, May 6, 2008 at 2:51 PM, Tracy Tibbals <TTibbals@mbdlaw.com> wrote:

> Hi Susan:
>
> I expect that you do not know about the following correspondence to the Superintendent and Board.
>
> From: L      K        <l█████ot@hotmail.com>
>
> Date: Tue, 6 May 2008 14:27:19 -0700
>
> To: <sdamarto@bsd.k12.ca.us>
>
> Cc: <efooley@bsd.k12.ca.us>
>
> Subject: Ki███████-URGENT
>
>
> L       and W█████ n K█
>
> 1257 Paloma Avenue
>
> Burlingame, CA  94010
>
> Tel: (650) 348-1246
>
> May 6, 2008
>
> Dr. Sonny Da Marto          (hand-delivered and sent by e-mail)
>
> Burlingame Superintendant of Schools
>
> 1825 Trousdale Drive
>
> Burlingame, CA
>
> Burlingame School District Board of Trustees:   (sent by e-mail)
>
>     Marc Friedman

Michael Barber

Liz Gindraux

Mark Intrieri

Greg Land

Dear Dr. Da Marto and Members of the Board of Trustees:

We are writing to ask you, Superintendent, and the School Board for your immediate help. We have been trying to reach a compromise with Burlingame School District regarding our son's special education program. A contested due process hearing is scheduled to begin on May 13, 2008. We think we can avoid this hearing if we can tell you why we have not been able to settle our dispute. We are writing to you because our school district contact, Lourdes Desai, is unreasonably refusing to compromise. As a result, our family and the school district will spend much more money on going to a due process hearing than compromising our dispute. We hope that your intervention will prevent this unnecessary expenditure of funds.

Our 7-year-old son, L▇, attends Lincoln Elementary. Both of us are active volunteers at Lincoln, in the classroom, on the playground, and with school fundraising. We love being part of the Lincoln family.

We did not want to be in this position of having a dispute at all with the school district. For 2 years, we have been trying to convince the school district to provide crucial needed services for our son. L▇ has an obvious speech and language disorder that affects how he speaks and how he processes language.

However, L▇ also has very significant problems that have been recognized by our outside experts. At our expense and for more than 2 years, we have brought a variety of experts to school IEP meetings to explain why L▇ needs specialized services to address these other crucial needs that arise from his diagnosis of high functioning autism.

Last spring, we agreed with the school that L▇ needed to repeat his kindergarten year because he had not made sufficient progress in social skills, speech, language, and academics. We could see that L▇ needed even more services than he was receiving from the school and that we were providing.

The school district continued to refuse to provide additional services that L▇ needed. In late March 2007, we started to provide a social/behavioral program for 10 hours per week by PALS, a behavioral agency to provide specific services to assist L▇ with his autistic like behaviors.

(Burlingame School District contracts with PALS to provide services with other students in the district.) With these additional services, L▇ finally started to make some important improvements, which were noticed by us and by his school providers.

A year ago, Special Education Director Lourdes Desai came up with an idea, which we accepted right away. She suggested that once and for all, we get another expert opinion as to whether L▇ met the educational criteria as "autistic like", and if so, what services he needs. We agreed that Dr. Joan Baran, an expert in autism at the Children's Health Council in Palo Alto, would conduct the evaluation.

After her assessment, District outside expert Dr. Baran agreed with all of our prior assessments that L[__] had autistic like behaviors, and for the very same reasons that our outside experts had explained to the IEP team many times. Dr. Baran also gave very similar recommendations as to what services L[__] needed. Dr. Baran came to an IEP meeting in October 2007 to explain her report.

We were devastated when the school district did not agree to any of its own expert's findings or recommendations. The school district again did not recognize either L[__]'s autistic like behaviors or his need for specialized services as recommended by Dr. Baran and our other experts. No services were added to L[__]'s program. We had to continue the private program with PALS ourselves.

In March 2008, we very reluctantly filed a due process case, asking for reimbursements for many of the past services we had to pay for ourselves, and for the school district to pay for future services relating to L[__]'s needs for a social/behavioral program.

Last week, we substantially reduced our requests for reimbursements, so that we could avoid both the expense and disruption to relationships that a due process hearing would bring. Your attorney and our attorney have been discussing some settlement proposals in the last few days. They had already reached agreement (if we reached a full settlement) that the school district would fund services for L[__] going forward with a similar agency as PALS, and at the same level of services we had been providing<10 hours per week.

Although we think L[__] actually needs more than that level of services, we were willing to compromise and accept the level of services that the school district had suggested as part of settling our dispute.

We decided we wanted to make a formal settlement offer to the school district so that we could resolve this dispute as quickly as possible. In the evening of May 5, 2008, our attorney sent a proposed settlement agreement to the school district's attorney. The proposal has two main parts<reimbursements for our expenses and the school district's proposal for future services for L[__]. The part relating to future services for L[__] just put into writing the specific services already agreed to by your attorney and our attorney in their telephone conversations.

We also proposed a very reasonable cash settlement of $27,500 to include reimbursements to cover ALL past expenses and ALL of our attorney's fees.

We had actually spent more than $45,000 for past services that the school district had refused to pay for in the past. As of the time we made the written settlement offer, our attorney's fees exceeded $45,000, and they are increasing daily to prepare for the hearing. So, in other words, we offered to settle $90,000 of expenses for $27,500, which is extremely reasonable, and intended to put a stop to this dispute. Every day attorney's fees increase for both your attorney and our attorney.

Of course, that amount of attorney's fees does not include further hearing preparation, actually attending the 8-day hearing, and writing a legal brief after the hearing. Our attorney's fees would be expected to exceed $100,000. We think that we have a strong case, and that we will be successful. In that case, the school district will be responsible for paying us for ALL of our

reasonable attorney's fees.

But even if we lose completely, the school district would be spending much more than $27,500 on its attorney's fees for your attorney to prepare for and attend an 8 day due process hearing. None of the school district's money would be used to help L███, causing him to fall further behind, and to need even more services from the school district as he gets older. The time to help L███ is now, not later.

So far, the school district has refused to budge from offering any more than $5,000, which is completely unreasonable. We have compromised from $90,000 to $27,500. We can't understand why Ms. Desai would rather pay $50,000 or more to your attorney to fight a difference of $22,500. We already agree on everything else.

We ask you to talk to your attorney and help us settle this dispute. We want our public funds spent on children, and not on legal battles. Please tell your attorney that you want to sign our settlement agreement and put an end to this dispute.

We are available to discuss this issue with you by telephone and to meet you in person. Please let us know how we can help resolve this dispute or provide more information to you.

Thank you.

With Regards,


W███ and L███ R███


Windows Live SkyDrive lets you share files with faraway friends. Start sharing.
<http://www.windowslive.com/skydrive/overview.html?ocid=TXT_TAGLM_WL_Refresh_skydrive_052008>

Tracy L. Tibbals

Attorney at Law

Miller Brown & Dannis

71 Stevenson Street, 19th Floor

San Francisco, CA 94105

Tel: (415) 543-4111

Fax: (415) 543-4384

ttibbals@mbdlaw.com

www.mbdlaw.com

This email message is for the sole use of the intended recipient(s). It may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended

recipient(s), please alert the sender by reply email and destroy all copies of the original message. Thank you.