SUSAN J. BARDET SBN 83215
**THE LAW OFFICE OF SUSAN J. BARDET**
204 East Second Avenue, PMB #413
San Mateo, CA  94401
Telephone: (650) 340-9243
Facsimile: (650) 347-4527
Email: sbardet@gmail.com

JANE F. REID, SBN 109642
**THE LAW OFFICE OF JANE F. REID**
5551 Lawton Avenue
Oakland, California 94618
Telephone: (510) 601-6630
Facsimile:  (510) 601-6630
Email: jreid@sonic.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.K., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM, L.K., L.K., and W.K.,<br><br>      Plaintiffs,<br><br>      vs.<br><br>BURLINGAME SCHOOL DISTRICT and OFFICE OF ADMINISTRATIVE HEARINGS,<br><br>      Defendants. | CASE NO. C 08-02743 JSW<br><br>PLAINTIFFS' REPLY TO OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE INJUNCTIVE RELIEF<br><br>Date: June 20, 2008<br>Time: 9:00 a.m.<br>Courtroom 2, 17th Floor |

Defendants' Oppositions to plaintiffs' Application for Temporary Restraining Order and Order to Show Cause Re Injunctive Relief ("Application") fail to set forth any basis upon which the Application should be denied.

**1. Service Of The Application Was Proper**

Defendant Burlingame School District ("District") contends that service of the Application

was defective because it was served by e-mail. However, it was the District's own actions that rendered it unavailable for service via the Court's ECF system.

According to General Order 45, §IV, upon notification that an action is subject to ECF, each attorney of record is <u>obligated</u> to become an ECF User. Further, Local Rule 5-5 provides that all pleadings and papers subject to ECF <u>must</u> be electronically served. As the District concedes, although it was served with the Complaint and all related documents on June 5, it did not register with the Court's ECF program until the afternoon of June 18. Because the Court's Order herein provided for a 1 hour period on June 17 within which to serve defendants, plaintiffs served the District the only way possible - by e-mail prior to 10:00 a.m., attaching all the relevant documents and offering to effectuate service by fax. (Exhibit A to Declaration of Damara Moore.)

Because it is counsel's responsibility to register with ECF upon notification that an action is subject to ECF, any "harm" the District allegedly incurred resulted from its own inaction. By failing to timely register with ECF, the District essentially made itself unavailable for service. Further, the District obviously suffered no prejudice from the alleged defective service, as is evidenced by its lengthy Opposition.

**2. This Court Has Jurisdiction To Issue The Injunction**

Defendants raise various challenges to the Court's jurisdiction to hear the present action and issue the injunction. None have merit.

    A.  <u>This Court Has Federal Question Jurisdiction</u>

The District contends the settlement does not present a federal question. This Court disposed of this erroneous analysis in <u>R.K. v. Hayward Unified School District</u>, 2007 WL 2778702, (N.D. Cal. 2007**),** holding that where a settlement agreement arises pursuant to a provision of federal law, federal question jurisdiction exists. Here, the statutory offer of settlement was expressly predicated

on 20 USC §1415(i)(3)(D)(i).  Furthermore, as in R.K. and the cases cited therein, enforcement of the agreement "requires the interpretation and application of federal law," and thereby arises under federal law.  As held by the Court in C.T. ex rel. D.T. v. Vacaville Unified School District, 2006 WL 2092613 (E.D. Cal. July 27, 2006): "As plaintiff's agreement with VUSD was executed under section 1415 of the IDEA, Congress has expressly conferred jurisdiction upon the court to hear plaintiff's claims arising from the Agreement." (*6).

    B.  Plaintiffs Have Exhausted Administrative Remedies

Both defendants allege lack of jurisdiction based on a failure to exhaust administrative remedies.  As the District correctly notes, where there is a question about whether the IDEA's administrative machinery can redress the injury, exhaustion is required.  But, unlike the cases cited by defendants, the Office of Administrative Hearings ("OAH") has made clear in the present case that the "IDEA machinery" is not available to redress the injury.  OAH has explicitly ruled that it does not have jurisdiction to hear issues regarding settlement enforcement. (Application Exhibit G.)

Where a hearing office determines it lacks jurisdiction to hear an issue, there is no requirement to exhaust.  In C.T. v. Vacaville, supra, plaintiff requested a hearing on the issue of breach of a settlement agreement.  OAH ruled there, as it did here, that it lacked jurisdiction to hear the issue.  In the subsequent federal court action, defendants sought dismissal on the basis of a failure to exhaust administrative remedies.   The Court held plaintiff had no duty to exhaust since a due process hearing was *not available* to her.  "However, here, the court finds that since the hearing judge denied plaintiff a due process hearing on the ground that OAH lacked jurisdiction over her claims, she carried her burden [of exhausting] to the extent possible in the circumstances of this case." 2006 WL 2092613 *8.

Similarly in the present case, OAH has refused adjudication regarding enforcement of the accepted statutory offer.  The fact that OAH is willing to conduct a hearing on the very claims

resolved by that settlement is not relevant to exhaustion.

The District cites <u>Hoeft v. Tucson Unified School District</u>, 967 F.2d 1298 (9th Cir. 1992), and <u>Robb v. Bethel School District #403</u>, 308 F.3d 1047 (9th Cir. 2002), in support of its contention that plaintiffs' claims herein are precluded by a failure to exhaust. As the Court in <u>C.T. v. Vacaville</u>, <u>supra</u>, found, both those cases inapplicable because, in those cases, plaintiffs' alleged injuries <u>could</u> be redressed to some degree by the administrative process. The reasoning in <u>C.T.</u> also applies here. Rightly or wrongly, OAH has determined it <u>will not</u> adjudicate any issue pertaining to settlement enforcement. Since there is no degree of redress available to them in the administrative forum, plaintiffs have "carried their burden to the extent possible." Pursuing the administrative process would be futile.

Both defendants rely on <u>R.K.</u>, <u>supra</u>, to support their contention that plaintiffs have failed to exhaust. <u>R.K.</u> is distinguishable because there, the settlement agreement at issue did not entirely dispose of plaintiff's claims. Claims remained that <u>could</u> have been resolved through the administrative process. As this Court stated in <u>R.K.</u>: "It is likely that issues currently before the OAH overlap significantly with issues this Court would have to evaluate in determining whether the Settlement Agreement was breached." <u>Id</u>. at *9. Unlike <u>R.K.</u>, , the statutory settlement here resolves <u>all</u> claims. (Exhibit C to Application.) If enforced, there will be nothing left for OAH to hear. Accordingly, <u>R.K.</u> does not apply to the present case.

C. <u>This Court Has Jurisdiction To Hear Those Issues Raised As An Interlocutory Appeal</u>

The District opposes the Application on the basis that there is no interlocutory jurisdiction. Its argument in this regard is equally unavailing.

First, the District attempts to blur the separate allegations of the Complaint into one interlocutory appeal. That is not the case. Plaintiffs' First Claim for Relief is <u>not</u> interlocutory. Given OAH's apparent lack of jurisdiction to hear the claim, it is a stand-alone claim for relief.

Second, the District relies on Digital Equipment Corp. v. Desktop Direct, 511 U.S. 863 (1994) for the proposition that interlocutory appeal is not appropriate. That reliance is misplaced. The basis of the interlocutory appeal in that case was 20 U.S.C. §1291, not §1292. In fact, when the U.S. Supreme Court found that a §1291 interlocutory appeal was not appropriate, the court stated: "In preserving the strict limitations on review as of right under §1291, our holding should cause no dismay, **for the law is not without its safety valve to deal with cases where the contest over a settlement's enforceability raises serious legal questions taking the case out of the ordinary run."** (Id., at 883). The Supreme Court then specifically offered §1292(b) as an alternative, stating: "…the discretionary appeal provision (allowing courts to consider the merits of individual claims) would seem a better vehicle for vindicating serious contractual interpretation claims than the blunt, categorical instrument of §1291 collateral order appeal."

Third, this case presents that rare exception to the federal court's general preference for avoiding piecemeal appellate review: "where an immediate appeal may avoid protracted and expensive litigation." In Re Baker & Getty Financial Services, 954 F.2d 1169, 1172 (6th Cir. 1992) – particularly true here where the costs of proceeding far outweigh the cost of the settlement. Further, interlocutory appeal is warranted where it would materially advance the ultimate termination of the litigation. Zygmuntowicz v. Hospitality Investments, Inc., 828 F. Supp. 346, 353 (E.D. Pa. 1993). Enforcement of the settlement agreement does just that.

Fourth, the District asserts that §1292(b) is inapplicable because it only applies to order of a district judge, not OAH. Under this reasoning, there could never be interlocutory appeal from OAH to federal court.

Finally, as for the District's contention that there is no "controlling issue of law as to which there is substantial ground for difference of opinion," plaintiffs' claims are most certainly issues of law: does the statutory offer constitute a binding agreement? Can OAH decline to enforce

agreements in matters pending before it?  Does a §1415 statutory offer constitute an offer of judgment?  And those issues most certainly control the outcome of the administrative hearing.

A question of law is appropriately certified for interlocutory review if the question is not settled by controlling authority and there is a substantial likelihood . . . that the [lower court] ruling will be reversed on appeal." Gamboa v. City of Chicago, 2004 WL 2877339 at *4 (N.D. Ill.).  In the present case there is no controlling authority governing whether §1415 statutory offers constitute offers of judgment. Further, this Court itself has questioned OAH's claim of lack of jurisdiction to enforce settlements in matters pending before it.  R.K. v. Hayward Unified School District, 2007 WL 2778702 (N.D. Cal. at •8):  "In the absence of a final OAH order regarding enforcement of the settlement, Wymer is not a jurisdictional bar to the OAH hearing such claims."

In sum, the District has not raised any viable issue pertaining to this Court's jurisdiction to hear an interlocutory appeal herein.[1]

D.  The Abstention Issue Is Irrelevant Here

The District wrongly relies on the Abstention Doctrine to argue that this Court has no jurisdiction to stay the OAH proceedings.  This is not an abstention case.  Abstention is appropriate in those proceedings involving a vital state interest. The present case does not present any such state interest.  It is simply a challenge to certain claims made by defendants with respect to certain rights made available by the IDEA.  Since federal courts are expressly authorized to address issues arising under IDEA (§1415(i)(2) and §1415(i)(3)(A)), abstention is not at issue.

Neither of the cases cited by the District in support of abstention are on point here. Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), involved a state interest in noncriminal proceedings that bear a close relationship to criminal

proceedings. The Baffert case involved state interests such as protecting the integrity and regulation of horse racing, and protection of the public.

**3. Defendants have failed to show plaintiffs are not likely to succeed on the merits**

Other than the jurisdictional contentions discussed above, defendants allege only one basis on which they claim plaintiffs are not likely to succeed on the merits. The District contends there was no settlement because the agreement had to be approved and ratified by the District's Governing Board. As noted in plaintiffs' Application, ratification was not part of the statutory offer and therefore constitutes an unlawful attempt to add a new term to the settlement.

In support of its position, the District cites California Education Code §17604 and Santa Monica Unified School District v. Persh, 5 Cal.App.3d 945, 952 (1970). Neither rescues the District here. While Ed. Code §17604 speaks to approval and/or ratification, it does not render all non-ratified contracts void or non-binding. To the contrary, the statute contemplates the *enforceability* of such contracts, providing that an employee may become personally liable for money paid out as a result of malfeasance.

The District's reliance on Santa Monica is equally misplaced. That case discussed that the reason for ratification is to allow public scrutiny of major decisions, such as the purchase of real property. While worthy, such scrutiny is not always applicable. Settlement agreements are often confidential and, as in the present case, not a particularly major decision. The settlement here is relatively modest.

Since ratification is the only basis on which the District contends plaintiffs are not likely to

---

[1] The District's reliance on McQueen is misplaced because in that bifurcated hearing, plaintiff had only exhausted the issue of whether a state policy, in general, violated IDEA, and the remaining issue of whether the student was denied FAPE had not been exhausted.

succeed on the merits, defendants have failed to successfully oppose the Application in that regard.[2]

**4. Plaintiffs Have Established Irreparable Harm**

Both defendants assert that plaintiffs have failed to show the requisite irreparable harm. The District relies on Digital for this proposition. As set forth above, Digital is inapplicable because not only was a different statute at issue, but the U.S. Supreme Court specifically noted that 20 U.S.C. §1292 "would seem a better vehicle for vindicating serious contractual interpretation claims than the blunt, categorical instrument of §1291 collateral order appeal". The District's reliance upon R.K. (2008 WL 183559, *2 (N.D. Cal. 2008)) is also misplaced, because in R.K.: "[S]taying the OAH proceeding would preclude Plaintiff from exhausting his pending administrative claims." Here, there are no other claims. Plaintiffs would only be forced to litigate if enforcement is denied.

Additionally, while both defendants contend that avoiding a hearing is not a sufficient showing for irreparable harm, they neatly ignore that plaintiffs have alleged more than the costs and time in going to hearing. They have also alleged the potential harm to L.K.'s (and his parents') relationships with his teachers. Such emotional injury has been held to constitute irreparable injury. Chalk v. U.S. Dist. Court Cent. District of California, 840 F.2d 701 (9th Cir. 1988): "His closeness to his students and his participation in their lives is a source of tremendous personal satisfaction and joy to him and of benefit to them . . . Here, plaintiff is not claiming future monetary injury; his injury is emotional and psychological-and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial." 840 at 707-10.

The District's claim that plaintiffs will not be harmed if the injunction is not granted is simply wrong. Besides all the reasons set forth in the moving papers, plaintiffs are privately paying for the 10 hours per week of speech and language services (including pragmatics) the District

---

[2] The District inappropriately relies on the G. Heileman Brewing and Goss Graphics cases for the proposition that courts cannot coerce settlements. These cases involved encouragement of

Reply to Opposition Re TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW
Page 8

<u>should</u> be providing pursuant to the settlement.

The District argues that the purpose of an injunction is to maintain the status quo and that the status quo here would be proceeding to trial. Plaintiffs disagree. The status quo at present is "off-calendar". The hearing dates were vacated (on the District's representation to OAH that the settlement offer had been accepted; Exhibit E to Application), and the Trial Setting Conference has been continued to allow this motion to proceed.

The District suggests that Plaintiffs merely dismiss their case. However, if enforcement herein is denied, Plaintiffs would risk losing thousands of dollars of claims to the statute of limitations.

Both defendants make much of the requirement to conclude hearings within 45 days. Plaintiffs have briefed this issue in their moving papers and will not repeat their arguments here. Suffice it to say that the 45 days expired at the beginning of June and both federal and state law permit extensions of the timeline. Here, the timeline should not even be applicable because, as the statutory offer stated (Exhibit A to Application), that acceptance resolves the OAH case.

Finally, public policy and the framework of IDEA are to promote settlements and resolve disputes between families and school districts. If injunctive relief is not granted here, such public policy will be thwarted.

For all of the above reasons, plaintiffs respectfully submit that the injunction should not be

//

//

//

---

settlements, but not en~~forcement of settlements. No offers had been accepted.~~

1
2  denied and the OAH hearing must be stayed.
3
4  Dated: June 19, 2008                                    Respectfully submitted,
5
6
                                                    _____/S/_____
7                                                   Susan J. Bardet
                                                    Attorney for Plaintiffs
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
_____
Reply to Opposition Re TRO/OSC Re Injunctive Relief
Case No. C 08-02743 JSW
Page 10