**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.K., a minor by and through his Guardian ad Litem, L.K., L.K., and W.K., <br><br> Plaintiffs, <br><br> v. <br><br> BURLINGAME SCHOOL DISTRICT, and OFFICE OF ADMINISTRATIVE HEARINGS, <br><br> Defendants. | No. C 08-02743 JSW <br><br> **ORDER DENYING *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND DISMISSING FOR LACK OF SUBJECT MATTER JURISDICTION** |

**INTRODUCTION**

Now before the Court is the *Ex Parte* Application for a Temporary Restraining Order filed by Plaintiffs, L.K., a minor, L.K., his guardian ad litem, and W.K (collectively "Plaintiffs"). Having considered the parties' papers, relevant legal authority, and the record in this case, and having had the benefit of oral argument, the Court HEREBY DENIES Plaintiffs' *ex parte* application and DISMISSES this matter for lack of subject matter jurisdiction.

**BACKGROUND**

The following facts are undisputed, unless otherwise noted. L.K. is seven years old and attends school within the Burlingame School District ("the District"). (Compl. ¶¶ 2, 18; Declaration of L.K. ("Mother's Decl."), ¶¶ 2-4.) L.K. is eligible for services under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"). On or about March 21, 2008, Plaintiffs initiated a due process hearing pursuant to the IDEIA to resolve a

dispute with the District over L.K.'s educational needs. (Compl. ¶¶ 3, 19; Mother's Decl. ¶¶ 1, 6.) That proceeding, *L.K. v. Burlingame School District and San Mateo County of Education*, OAH Case No. 2008030820 is pending before the Office of Administrative Hearings ("OAH") (hereinafter "the Due Process proceedings"). (Compl. ¶¶ 18-26; Declaration of Susan J. Bardet ("Bardet Decl."), ¶ 24.)

On May 2, 2008, the District sent a letter to Plaintiffs which set forth "a written offer of settlement ... pursuant to 20 U.S.C. Section 1415(i)(3)(D)" (hereinafter "the ten-day offer").[1] (Compl., Ex. A; Bardet Decl., ¶ 4.) The letter further states that the

> offer supersedes any prior settlement offers with regard to [OAH] Case No. 2008030820 and is limited to settlement of all of [L.K.'s] educational claims in OAH Case No. N2007100455 [*sic*]. If you accept this offer, the above referenced matter will be resolved. In consideration for a complete dismissal of OAH Case No. 2008030820 with prejudice, and release and waiver of all claims therein, the District offers the following: 1. The District will continue to implement L.'s current IEP. 2. The District will provide an additional ten hours per week, during the school year and extended school year, of speech and language services through a mutually agreeable non-public agency. 3. The District will pay the sum of $5,000 to L.'s parents.
>
> ...
>
> Petitioner may accept this offer by signing below and transmitting the signed document via facsimile to [the District's counsel] or by e-mail to [the District's counsel] and regular mail to: [the District's counsel.]
>
> If you accept this offer, the District will draft a settlement agreement memorializing the parties' agreement.

---

[1] Section 1415(i)(3)(D) is entitled "Prohibition of attorneys' fees and related costs for certain services." It provides, in pertinent part, that "[a]ttorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if– (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins; (II) the offer is not accepted within 10 days; and (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i).

2

1  (Compl., Ex. A.)[2] According to Plaintiffs, the parties engaged in some discussions to clarify
2  one aspect of the ten-day offer. On May 9, 2008,[3] Plaintiffs assert that they accepted the
3  District's ten-day offer. Plaintiffs' counsel also sent a cover letter with Plaintiffs' acceptance,
4  in which she enclosed a proposed draft settlement agreement. (Compl., Ex. A; Bardet Decl., ¶¶
5  13-14.) On May 12, 2008, the District sent a letter to the OAH, in which it advised the
6  presiding judge that the Plaintiffs had accepted the District's ten-day offer and in which it
7  requested that the hearing dates be vacated. (Bardet Decl., ¶16; TRO Ex. E.) The OAH vacated
8  the hearing dates and set the matter down for a status hearing. (Bardet Decl., ¶ 17.)

9  Thereafter, on May 15, 2008, the District sent a letter to Plaintiffs in which it stated that
10  it did "not recognize the attempt to accept its May 2, 2008 10-day offer received after business
11  hours on May 9, 2008." (TRO Ex. F.) The District's counsel also advised Plaintiffs that the
12  District had not authorized certain terms of the ten-day offer and stated that it could no longer
13  agree to the terms set forth in the May 2, 2008 ten-day offer. The District then set forth a
14  "revised" offer pursuant to 20 U.S.C. § 1415(i)(3)(D). (Bardet Decl., ¶ 18; TRO Ex. F.) At the
15  hearing on this matter, the District made clear that it does not dispute this sequence of events. It
16  asserts, however, that the parties were engaging in settlement negotiations. (*See* Declaration of
17  Damara Moore, ¶ 8.) The District also asserts that the ten-day offer was not binding until
18  memorialized in writing and approved by the Board.[4]

19  On May 22, 2008, Plaintiffs filed a motion before the OAH to either enforce the ten-day
20  offer or enter judgment or decision by settlement. The OAH denied the motion and concluded
21  that "[a]uthority to enforce a settlement agreement in special education proceedings has been
22  vested with the California Department of Education. ... Thus, OAH lacks the authority to grant

---

[2]  Lourdes Desai, the District's Director of Special Education, was copied on the letter. (*Id.*; Bardet Decl., ¶¶ 4, 8-9.)

[3]  Again, the record demonstrates that Ms. Desai was copied on some of the written correspondence addressing these clarifications. (Bardet Decl., ¶¶ 5-7, 9; TRO Ex. B.)

[4]  As supplemental authority, the District cited *J.C. v. Vacaville Unified Sch. Dist.*, 2007 WL 112138 (E.D. Cal. Jan. 10, 2007) as support for its position that the ten-day offer was not a binding settlement agreement.

3

the relief" sought by Plaintiffs. (*See* Bardet Decl., ¶ 19; TRO Ex. G.) The OAH also denied subsequent motions to stay the Due Process proceedings, while Plaintiffs sought to enforce the settlement agreement in this Court. A telephonic trial setting conference is set for June 24, 2008, at which point the OAH is set to schedule trial dates on the merits of the Due Process proceedings. (Bardet Decl., ¶¶ 20-24; TRO Exs. I, J).

## ANALYSIS

### A.     Applicable Legal Standards.

To prevail on a motion for temporary restraining order or to receive preliminary injunctive relief, the moving party bears the burden of demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions as to success on the merits and irreparable injury along with a sharp tipping of the balance of hardships in favor of the moving party. *Stahlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001). These alternative standards are "not separate tests but the outer reaches of a single continuum." *International Jensen, Inc. v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir. 1993). "Because injunctive relief prior to trial is a harsh and extraordinary remedy, it is to be granted sparingly and only in cases where the issues are clear and well defined and the plaintiff has established a reasonable certainty of prevailing at trial." *Watermark, Inc. v. United Stations, Inc.*, 219 U.S.P.Q. 31, 32-33 (C.D. Cal. 1982) (*citing Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir. 1964)). Moreover, "on application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Dymo Industries*, 326 F.2d at 143; *see also Mayview Corp. v. Rodstein*, 480 F.2d 714, 719 (9th Cir. 1973) (reversing grant of preliminary injunction based on existence of disputed factual issues).

Under either formulation of the test, a party seeking a preliminary injunction always must show that a significant threat of irreparable harm exists. *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). Thus, if the moving party cannot show irreparable harm, a court need not reach the issue of likelihood of success on the merits. *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

4

In addition, within the Ninth Circuit, the Court must also consider the public interest when it assesses the propriety of issuing an injunction. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

**B.  Plaintiffs Have Not Met Their Burden to Show A TRO Should Issue or that the Court Has Jurisdiction Over the Matter.**

Plaintiffs ask the Court to stay the Due Process proceedings until this Court has resolved whether the District's ten-day offer can and should be enforced. The District and the OAH oppose and argue that, because Plaintiffs have not exhausted their administrative remedies, the Court lacks jurisdiction over this matter. Each Defendant also argues that Plaintiffs have failed to demonstrate irreparable harm.

**1.  Plaintiffs Have Not Exhausted Their Claims and Have Not Demonstrated That Exhaustion Should Be Excused.**

When a plaintiff alleges "injuries that could be redressed to any degree by the" IDEIA's administrative procedures and remedies, "exhaustion of those remedies is required." *Robb v. Bethel Sch. Dist. # 403*, 308 F.3d 1047, 1048 (9th Cir. 2002). However, the IDEIA's exhaustion requirement is not rigid, and a plaintiff may establish that exhaustion should be excused if it would be futile or that administrative procedures would be inadequate. *Kutasi v. Las Virgenes Unified School Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007). In determining whether exhaustion is required,

> the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the [IDEIA's] administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the [IDEIA's] scope, and exhaustion is unnecessary. *Where the [IDEIA's] ability to remedy a particular injury is unclear*, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.

*Robb*, 308 F.3d at 1050 (emphasis added); *see also Kutasi*, 494 F.3d at 1168. "If a plaintiff is required to exhaust administrative remedies but fails to, the federal courts do not have jurisdiction to hear the plaintiff's claim." *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005).

5

Plaintiffs argue that they have exhausted their claims because the OAH has made a final determination that it does not have jurisdiction to enforce the ten-day offer. In support of their position, Plaintiffs rely heavily on *C.T. v. Vacaville Unified School District*, 2006 WL 2092613 (E.D. Cal. July 27, 2006). In the *C.T.* case, the parties reached a settlement agreement prior to resolution of the due process hearing. *Id.,* at *3. Alleging that the defendant violated the agreement, the plaintiff filed compliance complaints with the California Department of Education ("CDE"), "one of which was based on VUSD's alleged breach of" the settlement. *Id.* The CDE concluded that the defendant had not complied with the settlement and required the defendant to take corrective actions. Following further disputes over compliance, the plaintiff initiated a due process hearing to address the alleged denial of a FAPE for the plaintiff's current educational year and for years covered by the settlement. *Id.* The defendant moved to dismiss two of the three issues presented by plaintiff, on the basis of the settlement. The hearing officer granted the defendant's motion on the basis that it lacked jurisdiction and dismissed those issues from the case. The plaintiff then dismissed the due process hearing. *Id.*, at *3, *6 n.8.

Addressing the exhaustion issue, the *C.T.* court noted that the plaintiff "requested a due process hearing to address defendant VUSD's alleged breach of the" settlement agreement, and by dismissing those issues, the OAH fully resolved all the issues pending in the due process proceeding. Therefore, on those facts, the court concluded that the plaintiff carried her burden to exhaust "to the extent possible in the circumstances of [the] case." *Id*. at *8. In contrast, in this case, the OAH has not dismissed the Due Process proceedings.[5] Therefore, although the OAH has determined that it will not, and cannot, enforce the ten-day offer, the OAH has not denied Plaintiffs a due process hearing, and it is prepared to consider the parties' positions on what special education and services L.K. is entitled to receive under the IDEIA.[6]

---

[5] Indeed, Plaintiffs characterize the order as interlocutory in nature. (Compl., ¶ 7.)

[6] The Court also concludes that this case is distinguishable from *Porter v. Board of Trustees of Manhattan Beach*, 307 F.3d 1064 (9th Cir. 2002). In that case, the plaintiffs had obtained a decision in their favor in a hearing before the Special Education Hearing Office, the OAH's predecessor, with which the defendant did not comply. The *Porter* court concluded that exhaustion would be futile in light of *Wyner v. Manhattan Beach*

6

> [Those issues] are best resolved in the first instance by someone familiar with the resources available to meet the needs of the disabled and the responsibilities of the district to do so. School systems and education departments should also be afforded the opportunity to correct their own errors before interference from the courts. ... *Failure to require exhaustion would encourage parties to circumvent administrative review by entering into, and then disregarding, settlement agreements in order to go directly to federal court.*

*Steward v. Hillsboro Sch. Dist. No. 1J*, 2001 WL 34047100, at *5 (D. Or. March 1, 2001) (emphasis added) (holding that pursuant to the IDEIA, claims for breach of contract must first be presented to the appropriate administrative body).[7]

While the Court appreciates Plaintiffs' position, the Court does not find that exhaustion of the administrative process would be futile or that the administrative process would be inadequate. Although Plaintiffs frame the allegations in their Complaint and the claims for relief in terms of enforcement of the ten-day offer, the relief they seek from this Court is to obtain the services provided in that offer. As stated above, the focus of the Court's inquiry is "whether the plaintiff has alleged injuries that could be redressed to any degree by the [IDEIA's] administrative procedures and remedies." *Robb,* 308 F.3d at 1050. Although Plaintiffs may not obtain a remedy from the OAH in the specific form of relief sought in their Complaint, *i.e.* specific performance of the ten-day offer, the OAH still "could alleviate the root cause of their injury. For purposes of exhaustion, relief that is also available under the [IDEIA] does not necessarily mean relief that fully satisfies the aggrieved party. Rather, it means relief

---

*Unified Sch. Dist.*, 223 F.3d 1026 (9th Cir. 2000), in which the Ninth Circuit concluded that the SEHO lacked jurisdiction to enforce its own orders. *Id.* at 1069. Similarly, in *Pedraza v. Alameda Unif. Sch. Dist.*, 2007 WL 949603 (N.D. Cal. March 27, 2007), the court concluded that exhaustion would be futile because the OAH had dismissed the plaintiff's claim and because the California Department of Education also had refused to take any action to enforce the defendant's compliance with the IDEA. *Id.*, at *6. Thus, in each of those cases, the Due Process proceedings had been fully resolved, and the plaintiffs could not obtain relief through administrative procedures.

[7] As this Court previously found in *R.K. v. Hayward Unified School District*, 2007 WL 2778702 (N.D. Cal. Sept. 21, 2007), other courts have held that exhaustion is required for claims concerning breaches of agreements to settle due process complaints, where the alleged breach relates to a student's receipt of a FAPE. *Id.*, at * 7 (citing *J.P. v. Cherokee County Bd. of Educ.*, 218 Fed. Appx. 911, 913-14 (11th Cir. 2007); *Sarah Z. v. Menlo Park City Sch. Dist.*, 2007 WL 1574569, at *6 (N.D. Cal. May 30, 2007); *Pedraza v. Alameda Unif. Sch. Dist.*, 2007 WL 949603, at *6 (N.D. Cal. March 27, 2007); *Banks ex rel. Banks v. Modesto City Sch. Dist.*, 2005 WL 2233213, at *9 (E.D. Cal. Sept. 9, 2005)).

suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers." *Kutasi*, 494 F.3d at 1163 (internal quotations omitted). Accordingly, the Court concludes that Plaintiffs are required to exhaust their claims. Because they have failed to do so, the Court does not have jurisdiction over their Complaint.[8]

### 2. Plaintiffs Have Not Established That They Will Suffer Irreparable Harm if a Stay is Not Granted.

The Court also concludes that Plaintiffs have not demonstrated that they will suffer irreparable harm if the Court does not stay the Due Process proceedings. Plaintiffs argue that they "will be faced with two bad options: either litigate the due process hearing at the same time as the present action, or withdraw the due process hearing." (Mot. at 9:10-12.)[9] The Plaintiffs' argument focuses primarily on the cost of going forward with the Due Process proceedings, but they also argue that to proceed before the OAH "will create a tremendous amount of hostility between Plaintiffs and the District." (Mot. at 9:24-10:1.) Plaintiffs might have been inconvenienced by the possibility of litigating these issues in two fora, had they established jurisdiction, but that would not constitute irreparable harm. In addition, although some hostility

---

[8] The Court also notes that although the IDEIA permits settlement agreements reached pursuant to mediation under sections 1415(e) or through a resolution session under 1415(f) to be enforceable in federal courts, Section 1415(i)(3)(D), does not contain similar language. Several courts have concluded that, based on the plain language of the IDEIA, federal courts do not have jurisdiction to enforce settlement agreements reached outside the auspices of mediation or a resolution session. *See, e.g., M.J. v. Clovis Unified Sch. Dist.*, 2007 WL 1033444, at *4-*8 (E.D. Cal. April 3, 2007) (holding that "[t]he district court does not have jurisdiction to adjudicate Plaintiff's allegation that CUSD breached the settlement agreement, entered into prior to the effective date of the 2005 amendments and *outside the framework* of any alternative dispute resolution procedure previously or currently described in § 1415); *Bowman v. District of Columbia*, 2006 WL 2221703 at *2 (D.D.C. Aug. 2, 2006) (holding that because plain language of the IDEIA limited the types of settlements which are enforceable by federal courts, and because the settlement agreements at issue were not made pursuant to Sections 1415(e) or 1415(f), court did not have jurisdiction to enforce them); *cf. Traverse Bay Area Intermediate School District v. Mich. Dept. of Educ.*, 2007 WL 2219352 at *6-*8 (W.D. Mich. July 27, 2007) (noting that "[h]ad Congress intended that *all* settlement agreements reached during the course of the administrative process be enforceable in federal court, it could have easily adopted a provision to that effect") and finding that exhaustion was required before districts could pursue breach of contract claims based on ten-day offer).

[9] Plaintiffs have a third option, which is to proceed with the Due Process proceedings and potentially obtain a more favorable outcome than that offered by the District.

8

between Plaintiffs and the District may result from going forward with the Due Process proceedings, that is a risk inherent in any litigation.[10] Accordingly, for this reason as well, the Court concludes that the TRO must be denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' *ex parte* application for a temporary restraining order. The Court FURTHER ORDERS that this matter shall be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: June 23, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiffs submit no admissible evidence to suggest that going forward with the hearing would be detrimental to L.K.'s well-being.

9